UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| STEVEN J. RADEL,<br><br>              Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION;<br><br>              Defendant. | 4:19-CV-04068-VLD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR AN AWARD OF FEES AND COSTS<br><br>DOCKET NO. 20 |

**INTRODUCTION**

      Previously, the court granted plaintiff Steven Radel's motion to reverse the decision of the Commissioner denying him disability benefits and remanding back to the agency for further proceedings. See Docket No. 18. Mr. Radel now moves for an award of attorney's fees and costs as the prevailing party pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Mr. Radel previously executed an assignment in favor of his counsel of any fee award. See Docket No. 20-1. Accordingly, he asks in his motion that the court order the Commissioner to pay the award directly to his counsel.

      The Commissioner does not object to the award of fees and costs nor does he object to the amounts requested. See Docket No. 22. The

Commissioner *does* object to Mr. Radel's request to have the award paid directly to his counsel.  Id.  The Commissioner argues that following the Court's decision in Astrue v. Ratliff, 560 U.S. 586 (2010), it is established that (1) an award of attorney's fees under the EAJA belongs to the client/party, not to the attorney and (2) any such award is subject to offset to satisfy any pre-existing debt the client/party owes to the government.  The Commissioner further argues that Mr. Radel's purported assignment of his award of attorneys fees and costs to his counsel violates the Anti-Assignment Act, 31 U.S.C. § 3727(b).

## DISCUSSION

Both of the Commissioner's arguments have been soundly rejected in several past opinions by this district and adopted in only one very early opinion on the subject.  In Rathke v. Astrue, 2010 WL 3363380 (D.S.D. Aug. 23, 2010)[1], decided only two months after the Supreme Court's decision in Ratliff, with little analysis and without the benefit of the analysis of this issue by other courts, the Rathke court concluded the attorneys fee award must be paid directly to the client, notwithstanding the assignment of that award to counsel by the client.  Id. at *3.

A little over a year later, the issue cropped up again in Johnson v. Astrue, 2011 WL 4458850 at **8-9 (D.S.D. Sept. 23, 2011).[2]  The Johnson court distinguished the Rathke decision, noting that it was decided so soon

---

[1] The Honorable Jeffrey L. Viken, then-Chief United States District Judge.

[2] The Honorable Roberto A. Lange, United States District Judge.

2

after Ratliff that the court had not received "the benefit of the mounting authority permitting payment to the attorney when the prevailing plaintiff has no federal debt and has assigned any EAJA fee to counsel." Id. at *9. Because the Rathke decision had come into conflict with how most other courts decided the issue after Rathke, the Johnson court declined to follow its holding. Id. Instead, engaging in a thorough discussion and analysis of the issue and review of cases from other districts and circuits, the Johnson court honored the assignment and ordered the attorneys fee award to be paid directly to the lawyer. Id. at **9-11.

In Gors v. Colvin, 2013 WL 960230 at *3 (D.S.D. Mar. 12, 2013)[3], the Commissioner argued that the Court's decision in Ratliff required the court to order that the award of fees and costs be paid directly to the client, notwithstanding the client's prior assignment of such award to her attorney. The court surveyed the then-existing post-Ratliff case law and found the most common approach was to honor a litigant's assignment of fees to his or her attorney. Id. The Gors court therefore rejected the Commissioner's argument based on Ratliff.

Nine months later the same issue arose in Cooks v. Colvin, 2013 WL 6729868 at *2 (D.S.D. Dec. 19, 2013).[4] Citing, *inter alia*, Gors, the Cooks court rejected the Commissioner's argument that Ratliff required the court to set aside the plaintiff's fee assignment in favor of her attorney. Id. In addition to

---

[3] The Honorable John E. Simko, United States Magistrate Judge.

[4] The Honorable Karen E. Schreier, United States District Judge.

the argument based on Ratliff, the Commissioner also argued the assignment of attorneys fees to the lawyer violated the Anti-Assignment Act ("AAA). Citing McGrath v. Astrue, 2012 WL 4898276 at *7 (D. Minn. Oct. 1, 2012), the Cooks court rejected this argument as well. Cooks, 2013 WL 6729868 at *2. The court agreed that it would be nonsensical to read the AAA as prohibiting fee assignments given the legislative purpose behind that act. Id.

As explained in more detail in McGrath, the purpose of the AAA was to prevent chaotic uncertainty for the government when it paid claims where multiple payment of claims might occur or possible multiple claimants, litigants and assignees might make claims. McGrath, 2012 WL 4898276 at *5 (citing United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 373 (1949)). An assignment of attorneys fees to counsel in a Social Security case did not "create the kind of chaotic uncertainty for the Government" that the AAA aimed to prevent. Id. In fact, the McGrath court found, to the contrary, assignments of attorney fee awards in this context benefited the client by providing the attorney with an incentive to work for a successful result for his or her client. Id.

The McGrath court found the decision in First Fed. Savings & Loan Ass'n of Rochester v. United States, 58 Fed. Cl. 139 (2003), to provide the more appropriate framework for analyzing the issue. Adopting that court's holding that assignment of a claim created rights and obligations only between the attorney and the client and not as against the government, the McGrath court agreed that such assignments were not in contravention of the AAA. Id.

About a year after the Cooks decision, the Commissioner again raised the same arguments in opposition to an assignment of an attorneys fee award in a Social Security case. See Bales v. Colvin, 2014 WL 5422175 at *4 (D.S.D. Oct. 22, 2014). The Bales court, relying on its earlier decision in Johnson, as well as on the decisions in Cooks and McGrath, rejected both of the Commissioner's arguments (Ratliff and AAA) against payment of the attorneys fee award directly to the claimant's lawyer. Id. See also, Beckett v. Berryhill, 2018 WL 3019897 at *3 (D.S.D. Jun. 18, 2018).[5]

The above cases represent decisions by all of this district's sitting United States District Judges and one United States Magistrate Judge. All but Rathke are unanimous in rejecting the same arguments asserted by the Commissioner herein. Like the Johnson court, this court finds Rathke distinguishable because it was decided so close on the heels of the Ratliff decision that the court did not have the benefit of the developing case law. Accordingly, this court adopts the analysis and result reached in Johnson, Gors, Cooks, Bales, and Beckett and rejects both the Commissioner's arguments against direct payment of the attorneys fee award to counsel.

This court, as did the Cooks court, acknowledges the government's right of offset if Mr. Radel has any outstanding debts owed to the federal government. Cooks, 2013 WL 6729868 at *2. Accordingly, the court grants the Commissioner 30 days to determine if any debts exist and therefore any

---

[5] Judge Lange presided over both Bales and Beckett.

offset should be made, after which 30-day period the balance of the EAJA award shall be remitted to Mr. Radel's counsel.

The Commissioner cites to several cases outside this district and outside the Eighth Circuit in support of his position. The court acknowledges that there is a split of opinion among various courts. However, neither the Eighth Circuit nor the Supreme Court has addressed these issues. In the absence of binding authority, this court finds the opinions previously issued in this district to be most persuasive and most in keeping with the purposes of the Social Security Act.

The Commissioner also cites three decisions by this court in which this court ordered awards of attorneys fees to be made payable to the plaintiff rather than the plaintiff's attorney, despite the existence of an assignment of the award of attorney's fees. <u>See</u> Docket No. 27 at p. 2. In each of the three cases cited by the Commissioner, the plaintiff moved for an award of attorney's fees to be paid directly to the lawyer, the Commissioner filed a brief asking that the award be made payable directly to the plaintiff, and the plaintiff never responded to the Commissioner's request. The court acted in each instance on the theory that, by not responding to the Commissioner's request, the plaintiff was acquiescing in that request. None of these prior cases involved an actual litigation of the issues discussed herein. They are not precedent employable in the Commissioner's favor.

In addition to his original request for attorney's fees, Mr. Radel seeks an additional $208.74 for one hour spent drafting a reply to the Commissioner's

response to the original motion for attorney's fees. The court finds this to be both reasonable and supported by counsel's submission. Therefore, the court adds $208.74 to counsel's original request.

Finally, the court notes that, despite the parties' arguments, there appears to be no dispute based on the concrete action each party seeks from the court. The Commissioner stated in their original response to Mr. Radel's motion that it would, after determining if any debt was owed by Mr. Radel under the Treasury Offset Program, deliver "the remaining fee . . . [in] a check made out to Plaintiff but delivered to Plaintiff's attorney." See Docket No. 22 at p. 2 (last sentence).

Mr. Radel, for his part, included along with his original motion a proposed order for the court to sign. See Docket No. 20-4. The language in Mr. Radel's own proposed order provides that the court should order any remaining fee after the government takes its offset to be "paid by a check made out to Plaintiff, c/o the Plaintiff's Attorney, and delivered to the attorney." Id. The court sees very little, if any, difference between what Mr. Radel requested the court to do and what the Commissioner offered to do. Compare Docket No. 20-4 with Docket No. 22 at p. 2. Which raises the question: why all this briefing? In any event, the court adopts the language Mr. Radel proposed in the below order.

## CONCLUSION

Based on the foregoing facts, law and analysis, it is hereby

ORDERED that Mr. Radel's motions for EAJA fees and expenses [Docket Nos. 20 & 24], are granted. Following a 30-day period for administrative inquiry by the Commissioner to determine if Mr. Radel owes the federal government any pre-existing debt for which the government is entitled to offset, the Commissioner shall pay to Mr. Radel reasonable attorneys fees in the amount of $6,178.70 (representing $5,801.60 in attorney fees and $377.10 in South Dakota sales tax). In addition, it is also

ORDERED that the Commissioner pay to Mr. Radel expenses in the amount of $20.70. Finally, it is

ORDERED that, after offsetting any debt owed under the Treasury Offset Program, the balance of any remaining fee shall be paid by the Commissioner with a check made payable to Mr. Radel, c/o Mr. Radel's attorney, and delivered to Mr. Radel's attorney.

DATED this 31st day of January, 2020.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge